THOMAS K. SPENCER, SHERIFF OF HILLSBOROUGH COUNTY, PLAINTIFF IN ERROR, vs. ROBERT MUGGE, DEFENDANT IN ERROR.

A conveyance of a stock of goods by a debtor in failing circumstances to one of his creditors for the amount of his indebtedness to such creditor which was much less than the value of the goods, upon terms whereby the property conveyed remained in the possession of the debtor, who controlled and enjoyed it as if it were his own, is void as to other creditors.

This case was decided by Division B.

Writ of error to the Circuit Court for Hillsborough county.

The facts in the case are stated in the opinion of the court.

*F. M. Simonton* and *Solon B. Turman,* for Plaintiff in Error;

*H. C. Macfarlane, T. M. Shackleford* and *James F. Glen,* for Defendant in Error.

MAXWELL, J.

One J. H. May owned two saloons, known as the El Dorado and the Green Goose saloons, respectively, and a general merchandise business, all in Port Tampa, Florida. He became involved and unable to meet his obligations. The defendant in error, Mugge, was one of his creditors and had assumed liability for several of his debts to third parties. In April, 1897, May executed to Mugge, an absolute bill of sale to the three places of business for an expressed consideration of $5,170.25, which was the amount of these debts and certain other debts which were liens upon the property and which Mugge promised to pay. In November or December following all of this property was levied upon by the plaintiff in error, Spencer, as sheriff, under certain attachments sued out against the said May, whereupon Mugge sued in replevin for its recovery. This suit was tried by a referee who gave judgment for plaintiff, from which the defendants seeks relief by writ of error.

The contention of the plaintiff in error is that the evidence does not support the finding of the referee. The testimony shows that the two saloons were taken by Mugge, who is a liquor dealer, for $4,000, and that for the remaining $1,107 of his claim against May he took the general merchandise store, which was inventoried at about $4,000. All of the witnesses agree that Mays interest in the saloon.

ceased with this transfer. The quesiton at issue is the nature and effect of the conveyance of the general store.

Mugge testified that the sale to him was absolute, but that he had no use for the property and took it only to protect himself from loss, and therefore in making the contract for sale he proposed to May that if he would pay him the $1,170 which it represented he would turn it back to him, and that this was agreed upon.

May's testimony is that Mugge told him he would be attached before night and everything go for a song, and he would give him a chance to redeem himself and pay up his creditors; that if he would let Mugge have the two saloons Mugge would let him have the store and its profits, and he was to buy goods in Mugge's name and afterwards pay him $1,170.25; that he was to have a year to do this, and during this time Mugge was to pay him $75 a month for giving a general supervision to the two saloons. Mugge admits this employment of May, but says it occurred a few minutes after the other transaction, and not as a part of it.

C. D. May, whom Mugge says he called in as an honest reliable man to witness the transaction, and whom Mugge produces as a witness to testify thereto, corroborates J. H. May, as does a third witness W. R. May.

It is established by abundant evidence, and is not denied, that after the bill of sale was executed in April, the business continued under the management of May; that May's sign still remained over the door; that statements of the business were rarely rendered to Mugge in the beginning, and never during the remainder of May's management except one rendered by special request just before Mugge took charge of the business on November 10th; that during the whole of this time May put into the store

business the produce of a garden which was his private property, and kept no separate account of it; that he used the goods in the store as his own, and paid his farm hands out of the store. Most of these facts are testified to by Mugge as well as the other witnesses, though he denied having knowledge of some of them at the time of their occurrence.

In November Mugge, who lent his credit to the business, ascertained that it was not prospering, and that instead of paying his claim of $1,170.25, it would involve him in debt, and on the 10th day of that month he took charge of the business, letting May have the office safe, the accounts due the store, seven or eight hundred pounds of white lead and some other paints and sundries from the stock. Shortly thereafter the attachments were levied.

Almost the only conflict in all of this testimony is in the naked statement of the intention of the parties to make a *bona fide* sale of this stock of goods. However honest or benevolent may have been their intention, we think the transaction was one which had the effect of hindering and delaying the other creditors of May from realizing their claims out of his property, while he himself retained the possession, enjoyment and management of it in the endeavor to restore his fallen fortunes. As to creditors such a conveyance is void. Gibson v. Love, 4 Fla. 217; Loring v. Dunning, 16 Fla. 119; Neubert v. Massman, 37 Fla. 91, 19 South. Rep. 625.

The effect of this finding upon the conveyance of the two saloons has not been considered by the lower court and is not decided by us.

The judgment of the court below is reversed and a new trial awarded.