MARY S. SWAN ET AL. v. ISAAC SMITH.

1. FRAUDULENT CONVEYANCE. *Prior creditor. Partnership. Arbitration.*
   If partners submit the firm account for settlement to arbitrators, who decide that certain partnership debts shall be paid by one partner, he becomes, from the date of the award, a debtor to his copartner, within the purview of the statute against fraudulent conveyances.

2. SAME. *Judgment creditor. Principal and surety. Subrogation.*
   When a partner pays the judgments obtained by the firm creditors on the claims which by the award were to be settled by his copartner, the former is a judgment creditor and can maintain a bill to vacate a fraudulent conveyance executed by the latter.

3. SAME. *Chancery practice. Prevention of multiplicity of suits.*
   A bill filed when the complainant has only arranged to pay the judgment cannot be maintained, although he pays it before the hearing; but if before suit he has paid the other judgment which is embraced in the bill, the amount paid pending the suit may be embodied in the decree.

4. SAME. *Suit to vacate. Judgment. Estoppel.*
   If, under the award, a partner executes his due bill to his copartner, on which the latter obtains judgment, the former cannot set up, in the suit to vacate his fraudulent conveyance, frauds in the arbitration, of which he knew before judgment and failed without reason to assert.

5. SAME. *Priority of liens. Costs of suit.*
   Strangers who have paid off valid incumbrances upon the property fraudulently conveyed are entitled to be reimbursed; and if made parties defendant to the bill by amendment, they should be protected by the decree which orders the sale of the land.

APPEAL from the Chancery Court of Lincoln County.

HON. THOS. Y. BERRY, Chancellor.

Pierre Becker & Son were by the complainant, Isaac Smith, made defendants by an amendment to his bill upon the allegation that they had some equity in the land, to which his was superior. They answered, stating that they had paid a balance of the purchase-money due M. J. Whitworth, the vendor of Swan and James F. Smith, for the land in controversy, taking an assignment of his reserved lien, and also a sum due J. W. Bennett for taxes paid by him, taking an assignment of a mortgage executed to him upon the land by Swan and his wife, who had subsequently executed a deed of trust on the

land to secure the amounts paid by Becker & Son, and that they had also paid J. C. Hardy, the vendee of James F. Smith, an amount due him for part of the purchase-money by Mrs. Swan, and denying that they knew of the fraud, if any existed, claimed that their equity was superior to that of Isaac Smith. It further appeared that they had foreclosed the Whitworth lien, and Mrs. Swan had bought at the sale, and had paid her bid by giving Pierre Becker & Son the joint note of herself and husband, secured by their deed of trust on the land. The evidence tended to show that James T. Swan purchased the entire interest from Whitworth, using the names of James F. Smith and Hardy merely to vest title to a half interest in his wife, while he conveyed the other half to her directly.

*Sessions & Cassedy*, for the appellants.

1. There is no pretence that the Beckers' .claims are spurious, or that they did not pay the balance of the purchase-money, and the sum to Hardy. It is not charged that they had notice of any fraud on Swan's part, and their assistance to Mrs. Swan was legitimate. *Fulton* v. *Woodman*, 54 Miss. 158. Hardy was not in debt, nor was his vendor. None of the judgments can reach the interest purchased from him. The property was bound for the purchase-money whether Swan was guilty of fraud or not. Pierre Becker & Son had a perfect right to purchase these superior liens, and give them to Mrs. Swan or any one else. Under this decree, the fraud of a debtor renders void not only his own conveyance, and that of a joint owner, but is equally fatal to the original vendor, whose lien it postpones until the general creditor Isaac Smith is satisfied. Whatever may be the result as to the other questions in the case, the decree must be reversed as to Mrs. Swan and the Beckers.

2. The complainant is in no event entitled to more than is due upon his individual judgment. He had not paid the Watson judgment when the bill was filed, and was therefore entitled to no relief thereon. As to the Erwin claim, if he is a creditor at all, he is a subsequent one. Isaac Smith at most was a general creditor of Swan to the extent that he actually paid out money for his use in satisfaction of these judgments. If the bill had been filed on the Watson and Erwin judgments

alone, it would have been demurrable. How, then, can relief as to those judgments be granted on the final hearing? The conveyance of the half interest in the land by Swan to his wife is not shown to be fraudulent, but if it was, that alone could be subjected, and then only to the individual claim.

3. The complainant is, however, entitled to no relief. As shown, the arbitration was partial, and results in defrauding Swan, who is really the creditor of Smith instead of his debtor. Swan's laches in complaining of the fraud might be a bar to granting him relief, but certainly Smith cannot claim the aid of a court of equity to enforce his fraudulent judgment. The court should have left the parties where it found them. Before, in any event, the court would be justified in pronouncing the decree it did, the evidence must show that Swan was indebted to Isaac Smith. This both Swan and his wife deny, and while as to Swan the judgment of Isaac Smith against him, if unimpeached, would be sufficient proof of this, yet as to Mrs. Swan and the Beckers, it would only be evidence of its rendition, they being neither parties nor privies. *Moore* v. *Cason*, 1 How. 53; *Gridley* v. *Denney*, 2 How. 820; Freeman on Judgments, § 162. Again, it is alleged in the cross-bill, and not denied by the answer, that a relation of trust and confidence existed between Isaac Smith and Swan, and that Isaac Smith took advantage of the confidential relation, and practised a fraud upon Swan. This, not being denied, is admitted, and the admission may be used as evidence to support Swan's answer. *Griswold* v. *Simmons*, 50 Miss. 137. Isaac Smith, then, having obtained a benefit from Swan during the existence of such admitted confidential relation, the presumption of law is that the settlement by which he makes Swan indebted to him is fraudulent, and the burden of showing its fairness is upon Smith. *Meek* v. *Perry*, 36 Miss. 190; 3 Wait's Actions and Defences, 444; 1 Story Eq. Jur. § 218.

*J. A. Brown*, on the same side.

There is a total failure to prove the allegation of the bill that Isaac Smith was a creditor of Swan prior to the conveyances to Mrs. Swan. A partner is not, by virtue of the partnership alone, the creditor of a copartner. Partnership is simply

a confidential relation. The power of a member of the firm to draw more than his share does not create the relation of debtor and creditor. The actual drawing must be proved. *Alston* v. *Rowles*, 13 Fla. 117. In this case a fair settlement of the affairs of the firm would clearly bring Isaac Smith in debt to Swan. But such settlement cannot be had on this bill which is not filed for that purpose. The award of the arbitrators, which was admittedly partial, and so states on its face, had not the effect of separating the three claims embraced in this suit from the remainder of the partnership affairs. No final settlement has yet been had between the partners, and therefore neither is creditor of the other. The date of the arbitration, vaguely stated in the bill as February, 1873, is negatived by the proof. In point of fact, it could not have occurred earlier than the conveyance. The award itself is not dated. Even, however, if the complainant was a creditor, Mrs. Swan must prevail by virtue of her title acquired at the commissioners' sale under the decree foreclosing the vendor's lien at suit of Pierre Becker & Son, Whitworth's assignees. The execution of the note and deed of trust was a payment in full, and it was proper for Pierre Becker & Son to so receipt to the commissioner. This purchase cannot be assailed for fraud. It was perfectly fair. If Isaac Smith had a subsequent equity in the land and desired to protect it, he should have paid off the prior incumbrance before the sale.

*J. B. Chrisman* and *R. H. Thompson*, for the appellee.

1. The appellants have a Quaker gun in their fort, which their counsel pretend is a columbiad. It is said that the account furnished the arbitrators by Isaac Smith was fraudulent, and that on a fair accounting between the partners, Swan is the creditor. But the fact is, that the bridge adventure was fully settled by the arbitration, and years afterwards, when Isaac Smith has surrendered his vouchers, he cannot be compelled to account again. The pretext about a violation of trust and confidence is attenuated. Swan, who by his own showing would not settle with Isaac Smith except by arbitration, is absurdly compared to the sick girl in *Meek* v. *Perry*, 36 Miss. 190, who made a will in favor of her cunning guardian. Mary S. Swan cannot, in this collateral proceeding, go

into a reinvestigation of the partnership affairs, which have been settled by the award, the due bill and the subsequent judgment thereon. She was not a partner, and has no concern with those matters.

2. The proof of the fraudulent character of the conveyances is clear. James F. Smith was a man of straw, who paid nothing for his half interest, and to whom the deed was made by Whitworth, merely to conceal the fraud. Swan bought and paid for the property, and the series of conveyances was merely a scheme to vest the title in his wife in such manner as to avoid his debts. Such was the Chancellor's view of the evidence, and under the well settled rules of this court, unless there is some legal objection, his determination on the facts will not be disturbed. It is urged that the payment of the Erwin judgment does not make Isaac Smith a judgment creditor of Swan, and that the Watson claim was not paid until after the bill was filed. Since the decisions in *Clopton* v. *Gholson*, 53 Miss. 466, and *Thomson* v. *Hester*, 55 Miss. 656, these points require no refutation. This is a stronger case than either of those. The arbitration, the acceptance of the award by Swan, and its execution by the complainant as far as he was required, make the latter a prior creditor within the statute, while his payment of the judgments subrogates him to the judgment creditors' rights.

CHALMERS, J., delivered the opinion of the court.

Isaac Smith and James T. Swan, who had been partners in the building of a public bridge for the county of Lincoln, submitted to arbitrators the settlement of their partnership accounts. By the award it was determined that Swan should pay the debts due by the firm to one Erwin and to one Watson, and should also pay to his partner Smith the sum of one hundred and twenty-eight dollars, for which sum he executed his due bill. Smith was to pay all other firm debts. This award was accepted by both parties as satisfactory. Smith paid all the firm debts, the payment of which was allotted to him, but Swan paid neither the debts due to Erwin and to Watson, nor the due bill executed to his partner. Smith brought suit upon the due bill, recovered judgment, and

had return of *nulla bona*. Watson and Erwin brought suits against both Smith and Swan on the firm debts held by them and recovered judgments. Smith paid Erwin's judgment, and arranged to pay Watson's before filing this bill, the object of which is to vacate an alleged fraudulent conveyance of property on the part of Swan to his wife. It is objected by demurrer that the bill cannot be maintained, because it is not shown that the complainant was an existing creditor at the date of the alleged fraudulent conveyance. The point is not well taken. The rights and obligations of the parties must be considered as originating with the award which took place in February, 1873, whereas the conveyances complained of were made in August following.

It is further objected that the complainant cannot maintain any claim to relief based on his payment of the Erwin judgment or his arrangement to pay the Watson judgment, because as to neither of these is he a judgment creditor of Swan. The argument is that inasmuch as none but judgment creditors can maintain bills to vacate fraudulent conveyances, the complainant, before filing the bill, should have brought suit against his former partner, upon his assumption to pay these claims, and should himself have recovered a judgment at law against him, on account of his failure to meet his obligation. There is no difficulty in maintaining the bill so far as the Erwin judgment, which the complainant has paid, is concerned. From the date of the arbitration, and by virtue thereof, the relation of principal and surety existed between the partners as to the firm debts, which each thereby obligated himself to pay in exoneration of the other. As to the Erwin and Watson debts, Swan became primarily and Smith secondarily liable *inter sese*. While the creditors were in no manner bound by the arrangement, and a court of law could take no notice of it, a court of chancery will respect and enforce it, and will regard Smith, in paying off these judgments, in the light of a surety who has discharged a burden resting primarily on his principal. It is well settled in such cases that the surety will in a court of chancery be subrogated to all the liens, rights and privileges of the holders of the debt discharged. Our statute, Code 1871, § 2258, giving to sureties and indorsers who have paid

judgments against themselves and others primarily bound, the right to executions'in their own names against such others, is but the statutory adoption in courts of law of a well-settled equitable principle. While the statute limits it to those who are legally sureties or indorsers, courts of equity apply it whenever the circumstances of the case establish the practical relation. 1 Story Eq. Jur. §§ 493–502 ; *Conway* v. *Strong*, 24 Miss. 665 ; *Woods* v. *Ridley*, 27 Miss. 119 ; *Short* v. *Porter*, 44 Miss. 533.

With regard to the Watson judgment, the bill alleges that the complainant had made arrangements for paying, and expected shortly to pay it. It was paid before the hearing. If the bill had been filed upon that judgment only, it could not be maintained notwithstanding the subsequent payment ; but as it is part of a common transaction, as the jurisdiction is given by the other demands, and as the court has the fund and all the parties before it, we shall not remit the complainant to a new suit, but upon the same principle that authorizes the embodiment in a decree of the full amount due on a series of notes, some of which have fallen due since the filing of the bill, we permit a recovery upon it in deference to the doctrine that equity will, when possible, prevent a multiplicity of suits.

Upon the merits we concur with the Chancellor in thinking the conveyances to Swan's wife fraudulent. He properly disregarded Swan's claim that he had been defrauded in the arbitration. According to his own statement, he knew of the alleged frauds before the rendition of judgment on the due bill, and yet made no defence to it, and gives no reason for not having done so. The Chancellor erred, however, in failing to protect the interests of Pierre Becker & Son. They had paid off valid incumbrances upon the property, and were entitled to be reimbursed. The decree will be reversed, and cause remanded with instructions to have an account stated of the amount due them, and then for a decree of sale, with directions to the commissioner to pay that amount out of the proceeds, and apply the balance to the complainant's decree ; the costs in this court to be divided, and those in the court below to be paid by Swan and his wife.

*Decree accordingly.*