JOHN McMANNOMY

*v.*

CHICAGO, DANVILLE AND VINCENNES RAILROAD CO. *et al.*

*Filed at Ottawa April 3, 1897—Rehearing denied October 7, 1897.*

167 497
84a 645
167 497
91a 252
167 497
101a 573
167 497
105a 351
e105a 352

1. MASTERS IN CHANCERY—*when exceptions to master's report are sufficiently specific.* Exceptions to a master's report which notify the master in what particular each finding is objectionable, and which advise the opposite party what he is required to meet, are sufficient to raise the question of the correctness of the finding.

2. CREDITOR'S BILL—*right of creditor to reach assets on which others have an unasserted prior claim.* Where a judgment creditor seeks in equity to reach a fund in a third party's hands, as assets of his debtor, the fact that some one else has a prior claim thereon, which he does not assert, does not entitle the third party to retain the fund or deprive the creditor of his right.

3. SAME—*creditor may take action to reach insolvent's assets if receiver neglects to act.* The fact that a receiver might take action on behalf of all his insolvent's creditors to reach assets of the insolvent in a third party's hands does not deprive individual creditors of their right to reach the fund, where the receiver neglects to act.

4. SAME—*right of creditor to reach assets transferred after his claim was barred.* The fact that the Statute of Limitations had run against a creditor's claim before his debtor transferred his assets will not prevent him from pursuing the fund by a creditor's bill, based upon a judgment subsequently recovered upon the claim through the debtor's failure to plead the statute in bar.

5. INSOLVENCY—*agreement among creditors to accept same per cent on claims is not binding on one after others default.* An agreement among

certain creditors to accept the same per cent on their claims against an insolvent is not binding upon one of their number after substantial default by the others.

6. ATTORNEYS AT LAW—*allowance of attorney's fee without basis in evidence will not be sustained.* An allowance of a fee to an attorney as compensation for signing an indemnity bond for his client can not be sustained where there is a total absence of evidence in the record to justify the allowance.

7. SAME—*in allowing fees court is not bound by the evidence of other attorneys as to value.* An allowance for an attorney's fee should be the usual charge for the services between parties competent to contract, and the court should see that its decree does not represent mere opinions of friendly attorneys as to what would be proper in that particular case.

8. An allowance of an attorney's fee of $85,000 held to be excessive under the particular facts and circumstances, which are discussed at length in the opinion.

*McMannomy* v. *Walker,* 63 Ill. App. 259, reversed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

JOHN M. SOUTHWORTH, and WILLIAM BROWN, for appellant:

The allowance of an attorney's fee, and the insufficiency of the evidence for so doing, are proper reasons for an exception to a master's report. *Haldeman* v. *Insurance Co.* 120 Ill. 390; *Cheltenham Improvement Co.* v. *Whitehead,* 128 id. 279.

Where a party is dissatisfied with the finding of the master in chancery he should make distinct exceptions, so the court can readily understand what matters are at issue between the parties. *Singer* v. *Steele,* 125 Ill. 429.

Findings of fact by a master are not conclusive, but on exceptions duly taken the court will examine the evidence and ascertain that it supports the master's conclusions. 14 Am. & Eng. Ency. of Law, 941, note; *Worral's Appeal,* 110 Pa. St. 349.

T. A. Moran, and S. S. Gregory, for appellees:

Creditors may, under certain circumstances, lose their rights under the statute.    They may be barred by acquiescence in a transaction which they might otherwise have avoided, and even mere notice of it will sometimes have the same effect.    May on Fraudulent Con. 181.

A creditor who has confirmed a fraudulent deed by receiving a benefit under it, or has become a party to it, is estopped from afterward impeaching it.    Herman on Estoppel, sec. 1024.

A conveyance without consideration, and hence void as to creditors, is so only as to creditors existing at the time of such conveyance.    *Gordon* v. *Reynolds*, 114 Ill. 118.

It is only where the grantor reserves some interest in himself that such a conveyance is voidable as to subsequent creditors.    *Morrill* v. *Kilner*, 113 Ill. 318.

What is a fair and reasonable compensation for the professional services of a lawyer cannot in many, if not in most, cases, be otherwise ascertained than by the opinions of members of the bar, who have become familiar, by experience and practice, with the character of such services.    *Railroad Co.* v. *Wallace*, 136 Ill. 87.

Per Curiam:    The Chicago, Danville and Vincennes Railroad Company being indebted to John McMannomy, appellant, in the sum of $29,909.64 for the construction of a portion of its railroad, he obtained a judgment against it for that amount December 12, 1877, in the circuit court of Fountain county, Indiana, and upon that judgment he again recovered judgment April 22, 1885, in the circuit court of Cook county for the sum of $44,260.    Execution having been issued on the latter judgment and returned *nulla bona*, he filed his bill in this case in said circuit court of Cook county July 27, 1885, to reach certain bonds issued by the Chicago and Eastern Illinois Railroad Company and distributed among the appellee Edwin Walker and others, or the proceeds of said bonds, as assets of his

judgment debtor. It was charged that the bonds were delivered in settlement of a litigation between the Chicago and Eastern Illinois Railroad Company and the Chicago, Danville and Vincennes Railroad Company to quiet the title to property of the latter company sold at a foreclosure sale and afterward bought by the former company, and for a release of errors and waiver of right of appeal. The only questions arising on this appeal under that bill are between the appellant and the appellee Edwin Walker. The bonds delivered amounted to $500,000, of which Walker received $127,000. He claimed the right to hold them under an agreement made in 1882 with certain stockholders and holders of second mortgage bonds of the Chicago, Danville and Vincennes Railroad Company, for legal services and expenses.

The court, on a hearing, found that the $500,000 of bonds at the time of their delivery became the property of the Danville company, and were held in trust for it and its creditors, but that Walker, as the attorney of that company, was entitled to a reasonable compensation for his services and for any expenditures properly made for which he had not been otherwise paid. It was therefore decreed that he should appear before a master in chancery and account for the bonds received by him, or their proceeds, and that the master should ascertain and report the amount of proper expenditures made and services performed by him as attorney, and what compensation he had received therefor independently of the bonds; also what was the usual and ordinary compensation paid for such services. The master took the testimony, and reported that Walker was entitled to $20,000 for disbursements made by him, $10,000 paid to associate counsel, $10,000 for signing a bond indemnifying the Eastern Illinois company for delivering the bonds, $85,-000 for his services as attorney for the Danville company, and $2000 for interest from the time the bonds should have been delivered to him until he got them, thus bal-

ancing the amount of the bonds exactly. The bonds having been all accounted for in this way, the master recommended that the bill should be dismissed as to Walker. There was a hearing on exceptions to the master's report. They were overruled, and the bill was dismissed as to Walker for want of equity. The decree was affirmed by the Appellate Court.

It is suggested by counsel that the exceptions were not sufficient in form to present the question whether the findings of the master were correct. The findings related only to the expenditures and compensation of Walker. There was no account stated nor any items of expenditure or of services rendered. Walker presented no account and no items of anything, but testified to his services and expenditures in bulk, and the master reported them the same way as above. To this report there were sixteen exceptions, which were fully as specific as the evidence presented by Walker or the account stated by the master. The last exception was a general one, which pointed out nothing in particular, but there were others which designated specifically every error relied upon. They were sufficient to notify the master exactly in what particular each finding was objectionable and to give notice to Walker of what he was required to meet. They covered every question discussed in appellant's brief and argument.

It is also said that if there are any reasons which will justify the final decree dismissing the bill, it should be affirmed by this court, although such reasons are not based upon any finding of the chancellor or master, and are contrary to them and to the decree fixing the rights of the parties, and several grounds are insisted upon as sufficient to justify that dismissal. Whatever the rule may be as to justifying the final decree upon grounds not regarded by the chancellor and in opposition to his findings, we think that all such claims have been sufficiently answered by appellant. One of these claims is, that

Walker was not liable to account to appellant at all, because in the settlement of the litigation and quieting the ·title the Eastern Illinois company received $617,000 of second mortgage bonds and 24,253 shares of capital stock of the Danville company. These bonds belonged to the Danville company but were hypothecated for loans. The creditors with whom they were hypothecated were compromised with by using a portion of the bonds received from the Eastern Illinois company. It is argued that the right to call Walker to account may be in the· holders of second mortgage bonds rather than appellant, and that he cannot displace a prior valid lien and subject the assets to the payment of his debt. The stock was worthless. Horace H. Stevens, president of the Eastern Illinois company, testified that both stock and bonds were wholly worthless; that they had no market value, and that the transfer of them was only a mode adopted by W. D. Judson, president of the Danville company, to bring about the settlement. Judson at first wrote a letter to Stevens stating that he would sell the bonds and stock to Stevens. That letter was returned by Stevens, who said that he did not buy stock and bonds, and that they were of no use to him. The intent of the settlement was to stop the litigation, and Judson again wrote a letter with a provision that a decree was to be entered by the court to quiet the title of the Eastern Illinois company to the railroad property. This was the only proposition essential to the trade. We are satisfied that the stock and bonds were worthless. But whatever the facts may have been, it is a sufficient answer to the claim that appellant is the only one seeking to reach the fund. No claim is asserted by any other person, and the fact that there may be such a person somewhere having a right to reach it, but who is not seeking to do so, will not entitle Walker to keep it or deprive appellant of his right.

Of the same kind is the claim that appellant cannot have any remedy because the receiver of the Danville

company might have taken action on behalf of all creditors. A receiver of that company was appointed, who, so far as appears, has not been discharged; but if it was his duty to look after these assets and he neglected to do so, appellant is not thereby precluded from enforcing his right as an individual creditor.

Another ground for justifying the final decree is, that appellant knew that Walker and others were endeavoring to get something out of the Eastern Illinois company, and that he made some agreement with Judson, the president, by which he was to have the same per cent upon his claim that the other parties received upon theirs, and therefore he ought not now to be permitted to question the transaction or do anything except to try to get that percentage from Judson, if he can. If the agreement was made it was not carried out with him, and there having been a substantial default on the other side he is not bound by it. Besides, his judgment recovered in the circuit court of Cook county in 1885 fixes the amount he is entitled to recover.

It is the rule that a conveyance in fraud of creditors, where the grantor reserves no interest for himself and not in contemplation of future indebtedness, is void only as to creditors existing at the time the conveyance was made. Under that rule it is urged that the five years within which suit might be maintained here on appellant's judgment obtained in Indiana December 12, 1877, expired December 12, 1882, before Walker received the bonds, and that when he received them appellant was not a creditor, because the bar of that statute might have been interposed against his claim. That was a question between him and the Danville company, which alone had a right to plead the statute. It did not interpose it, and the judgment settled the fact that appellant was a creditor. It is now too late to controvert it.

The fee of $85,000 was allowed to Walker for services as attorney for the Danville company in foreclosure pro-

ceedings against it and in settlement of that litigation with the Eastern Illinois company, which derived title through the foreclosure sale. The value of these services is to be measured by the amount involved, the extent of the labor and the results obtained, rather than from the intricacy or difficulty of any questions involved, which seem to have been simple. A pretty full statement of these services is therefore here given, and this statement will also explain the charge of $10,000 for signing the bond, and his expenditures.

Walker had been the attorney of the Danville company for several years prior to January, 1875, and was paid in full by the company for his services to that time. On February 22, 1875, there were $2,500,000 of bonds of that company outstanding, secured by first mortgage, and on that day Stephen Osgood, the holder of a small amount of bonds, filed a bill to foreclose the trust deed in the circuit court of Will county, and H. B. Hammond and J. B. Brown were appointed receivers of the property of the railroad company in this State. At the same time a bill was filed in Fountain county, Indiana, to foreclose the trust deed on the road in that State. Walker had notice of the motion for a receiver in Indiana and resisted it with success. He secured the removal of the case in the Will county circuit court to the Federal Court for the Northern District of Illinois. William R. Fosdick and James B. Fish, trustees in the trust deed, filed their bill in the Federal court to foreclose the same. Hammond and Brown, receivers, were removed and Adna Anderson was appointed receiver. Walker appeared and defended for the railroad company during these proceedings. He was then employed by the receiver as his counsel, at $400 per month or $4800 a year, and acted as such counsel. His salary for February, March, April and May, 1875, including bills for clerk hire, printing, etc., was paid by order of the court, and he was fully paid for services rendered for the receiver until that officer

closed out his business, in the year 1877. The salary so paid amounted to $11,600 for services which are not a charge against the Danville company. The receiver was operating the road, and questions were arising on which he consulted counsel. Several suits were commenced against him, which Walker defended. There was a large floating indebtedness of the insolvent company, and the creditors filed intervening petitions to secure payment. There were one hundred and twenty-five such petitions. The receiver investigated all claims that were filed and generally called in his counsel, and Walker presented a great many of the claims to the court for allowance. These were all services for the receiver, and were paid for; but in addition to them he made such defenses to claims that he thought unjust as were necessary on behalf of the company.

The foreclosure suit proceeded to a decree for sale, which was entered December 5, 1876. On February 7, 1877, all the property of the Danville company in Illinois was sold to a committee of the first mortgage bondholders for $1,450,000, leaving a deficiency of about $2,000,000. The sale was approved April 12, 1877, and the property was turned over to the purchasers under an order made April 16, 1877. From the decree of foreclosure the Danville company prayed an appeal, but did not give the bond necessary to operate as a *supersedeas,* so as to stay the sale. The case having been removed to the Supreme Court of the United States, was pending there until the October term, 1881, when it was heard. Walker filed two briefs on a motion in that court to dismiss the case. When it was heard he made an oral argument and submitted a printed argument, and was absent from home on that hearing about ten days. On March 5, 1882, the Supreme Court reversed the decree, and in April, 1882, a petition for a rehearing was filed. In the meantime the Eastern Illinois company had purchased the railroad property. Walker had no agreement about fees until

after the reversal of the decree, and had paid for the records and expenses in the appeal and was surety for costs. He had signed appeal bonds for the company, on which he became liable, and he had been acting in the hope of getting something back for the money so paid out. His motive in prosecuting the appeal, he testified, was more particularly to put himself in a position where he could get back this money that he had paid out on appeal bonds and for expenses. These appeal bonds had nothing to do with the foreclosure litigation, but were apparently made before that time, and his interest as to them was that of a creditor. He then conferred with William D. Judson, president, Joseph E. Young, a stockholder, and Amos Tenney, a director, of the Danville company, and it was agreed that the stockholders and second mortgage bondholders should advance money for expenses, and Walker should have twenty-five per cent of what might be recovered for all services that he had rendered and should render and his disbursements, and the other parties interested would take the balance. Judson, the president, testified that he sent Walker from $3000 to $5000, and perhaps more, for the expenses; but this was denied by Walker, who testified that they paid him $1500 for printing and expenses at Washington.

The re-argument of the cause was heard in the Supreme Court at the October term, 1882. Walker again appeared, and also represented Elwell as trustee for the second mortgage bondholders. He filed a printed argument and also made an oral argument. Melville W. Fuller, now chief justice of the Supreme Court of the United States, also appeared and argued the case on behalf of the trustees Fosdick and Fish, who employed him to represent their interests as such trustees, and R. Biddle Roberts also made an argument on behalf of the second mortgage bondholders. The Supreme Court adhered to its first decision, by which the decree was reversed and the cause remanded to the circuit court.

The mandate from the Supreme Court was filed in the circuit court, and a strife began over the question whether the reversal affected the title of the Eastern Illinois company as purchaser. That company having become a party to the proceeding, insisted that its title was not affected by such reversal, while the Danville company was seeking to have its property restored to it. This contest continued for some time. Immediately after the reversal of the decree the bonds of the Eastern Illinois company began to depreciate and went down four or five cents on the dollar. Its stock, which had been worth a little less than par, ran down to less than seventy cents. The company wanted to issue a new series of bonds, and its officers became desirous of settling and adjusting the litigation, so as to get the question out of the way and relieve its title from the claims of the Danville company then pending against it. Through William Armstrong, its general solicitor, an interview was brought about between its president, Stevens, and Walker. After talking the matter over and not agreeing to anything, Walker referred Stevens to Judson, president of the Danville company, and between Stevens and Judson the agreement was made by which Judson was to deliver the second mortgage bonds and shares of stock of the Danville company above mentioned. A decree was to be entered by the court quieting the title to the property, and Judson was to receive $500,000 of the first mortgage bonds of the Eastern Illinois company. This agreement was made May 1, 1884, and the decree provided for was entered June 30, 1884. Walker had been elected one of the directors of the Danville company June 21, 1882, and he resigned July 24, 1884. There was a right of appeal from the decree quieting title, and the Eastern Illinois company would not carry out the contract until the time expired or the right was barred. To cut off that right a release of errors was executed by the Danville company. The trustees Fosdick and Fish, R. Biddle Roberts,

and all who claimed any interest in the trusteeship of the various mortgages, as well as Judson and Tenney, released whatever right they had, so that it left nobody to prosecute an appeal. Judson gave a bond of indemnity to the Eastern Illinois company, and Walker gave his bond of indemnity in the sum of $150,000 to keep the Eastern Illinois company harmless for delivering the bonds. This is the bond which he was allowed $10,000 for signing. The bonds were distributed among the parties to the plan, and Walker received $127,000 of them, as before stated. He delivered three of them, as directed, to Fuller for his services on behalf of the trustees Fosdick and Fish; he gave five to R. Biddle Roberts for his services for second mortgage bondholders, and he paid the proceeds of two to other attorneys. This makes up the $10,000 allowed to him as having been paid associate counsel. The remaining $117,000 of bonds he kept for himself, and received their face value for them.

One charge made against the moneys so received, which was allowed by the master and the court, is without any basis in the evidence, and that is the charge of $10,000 for giving a bond of indemnity to obtain the bonds from the Eastern Illinois company. The master found that this was a fair and reasonable compensation for the hazard involved, but there is no evidence on that subject in the record except that of Walker, who testified that he concluded there was no risk and therefore signed the bond. There is no evidence that there was the slightest risk or hazard, or that compensation was usually paid for doing such an act, or if so, what such compensation was. He was a creditor of the Danville company and interested to get the money due him for what he had paid as surety on appeal bonds and for expenses, and no reason appears why he should be paid for signing the bond. As there was a total absence of any evidence to justify that charge, the allowance must be stricken out.

Walker testified that the expenses of the litigation, together with what he had paid as surety for the Danville company on appeal bonds, amounted to $20,000, and that he had paid out on appeal bonds as high as $15,000. He had no account of payments on appeal bonds, and could not remember the cases or the amounts. He said the most important was the case of the Bank of North America, in which the judgment was between $8000 and $9000, which he paid, with interest. Neither did he have any account of other expenditures, and the charges making up the allowance of $20,000 were proved by wholesale. It must be conceded that this is not the usual manner of proving an account, especially as to payments on appeal bonds, which certainly might have been proved more satisfactorily. But we are not disposed to reverse the finding on that subject.

It was contended that Walker had been reimbursed for his expenses and disbursements by a conveyance to him of what was known as the Chittenden farm. There was evidence, and the master found, that the farm was conveyed to him by Judson, the president, and Amos Tenney, director, of the Danville company, who held title to the farm, and that it was understood that any equity there might be in the farm should apply on the disbursements. Walker denied that there was such arrangement, and also testified that there was no value in the property above the indebtedness and incumbrances. The master accepted the latter statement, and, on the ground that there was no equity in the farm, disallowed the claim. The money advanced or paid on account of the farm by Walker was $12,000, and he sold it for $24,-000; but he held it for some time and litigated the title, and we are not prepared to say the conclusion on that subject was clearly wrong, so as to require a reversal.

On the hearing, attorneys were examined before the master, upon each side, as to the usual and customary charge for such legal services as were rendered. There is

no fixed standard or price current for such services, and, as is usual upon questions resting in opinion and influenced by a variety of considerations, there was a very wide difference between the different witnesses. Their opinions varied ·from $25,000 to $150,000, and some of them seemed to think that Walker had done injustice to himself in not charging more than he did. Those who fixed the higher amounts generally gave estimates of what would be a fair charge or a fair and reasonable compensation. None of them had ever received such a fee, but some testified that they would not contract to do the work for $100,000. It is evident that their testimony was based rather upon what they thought just and proper than upon the usual and customary charge, which is the proper inquiry in such cases. (*Reynolds* v. *McMillan*, 63 Ill. 46.) While opinions are receivable and entitled to due weight, the courts are also well qualified to form an independent judgment on such questions, and it is their duty to do so. (*Goodwillie* v. *Millimann*, 56 Ill. 523.) It is to be remembered that such opinions come from members of the same profession, having an interest in the general subject; that they often rest largely upon vague and imaginative ideas as to the difficulty of the questions in the case, and mental anxiety engendered, the skill required and the responsibility involved, and that they are so flexible as to be easily swayed by personal regard and by the opinion and the wishes of the one making the charge. It is well known what standards of value are fixed for the services of judges of the Supreme Court of the United States and the courts of last resort in the several States, and while the great rewards of professional life are not to be regarded as wholly pecuniary, yet the great disparity between the salaries of the highest judicial officers and such estimates as were here given by some of the witnesses as to the value of these services is worthy of consideration. Such opinions do not represent the usual and customary charge or payment for such ser-

vices as between parties competent to contract. It is the
duty of the courts to see that due regard is given to the
rights and interests of clients, and that their decrees do
not represent mere extravagant opinions of friendly at-
torneys as to what would be just and proper in a given
case.

The evidence shows, what is matter of common knowl-
edge with the courts and the profession of which Walker
is an honored member, that he stands at the head of his
profession as a corporation attorney, and that in char-
acter, learning and experience in the general practice of
the law he stands in the front rank. But in this case there
was no intricate or abstruse question calling for the ex-
ercise of great talents. The questions involved in the
foreclosure were whether there had been a default in
payment of interest, and whether there could be a fore-
closure without the existence of the conditions author-
izing it in the trust deed; and the decree was reversed
in the Supreme Court of the United States only for the
reason that the majority of the holders of bonds had not
requested a foreclosure, as provided by the terms of the
trust deed. A large amount, however, was involved, and
a good deal of time and labor were required. This was
especially true during the period from the filing of the
bill until the property was turned over to the purchaser.
From that time until the hearing, which was from the
spring of 1877 until October, 1881, there was compara-
tively little labor. Afterwards there was the rehearing
in the fall of 1882 and the subsequent proceedings in the
Federal court. But at no time was the whole of Walker's
labor devoted to this suit. During all the time that the
services were being rendered he was local attorney in
Chicago of the Chicago, Milwaukee and St. Paul Rail-
road Company, and attended to its business to such an
extent that he received an annual salary of $5000 or $6000
for such services. He was also largely engaged all the
time in the general practice of law, and tried important

cases in the courts of Chicago and elsewhere, and in the Appellate Courts of this State as well as this court. During the time that these services were mainly rendered, and when they involved the most labor, he was counsel for the receiver, and performed services for that officer worth $4800 per annum.

It is said that but for Walker's services nothing at all would have been recovered, and that as he created the fund he should have a large share of it. So also the laborer in the field, the workman in the shop, and every one who produces a result requiring skill or labor, may say that but for him such result would not have been achieved; but he is not for that reason entitled to more than the reasonable value of his services. If a client has no lawyer he will very likely be defeated, but if a lawyer has no clients he will likely remain poor and unknown. Clients and rights of action are just as necessary as lawyers, and in this case the right of action of the Danville company was the source of the amount realized. It was to get rid of that claim, which was embarrassing the Eastern Illinois company, depreciating its stock and bonds and interfering with its operations, that the bonds were delivered. If this argument for Walker is to be considered, the fact that appellant's claim is for building part of the road itself should not be overlooked in balancing equities.

It is said a quarter of any amount realized should be deemed reasonable where the fee is contingent; and so it may be. A quarter or a larger proportion of a small judgment might be just, or it might be too little. There are many cases where the whole recovery would not be a fair compensation for the attorney, and it is manifest that such a rule can furnish no fair or certain guide. It would not do to say that because there are many cases where the whole recovery would be but just compensation, such should be the rule in all cases. While there are opinions of what would be reasonable and proper

which would justify the allowance made, the evidence of a less amount comports more nearly with our judgment of the usual charge and true value of the services rendered. The amount allowed is still regarded as a fortune among those who only get what they earn. The questions involved in the foreclosure were simple. The intervening petitions of creditors, so far as appears, involved nothing more than is usual in. such cases, which is simply the auditing of accounts. Walker was largely engaged in other business, and there was nothing about the case, except the large amount involved, which lent to it any extraordinary feature. Without discussing the question further, we will say that we cannot feel justified in suffering the allowance of $85,000 to stand for more than $50,000.

It was proper to allow interest to Walker from the time he became entitled to payment upon the amount due him, but the $2000 allowed by the master included interest on the over-charges which we have held were not due him, and a proportionate share of that interest should be deducted.

The judgment of the Appellate Court and the decree of the circuit court will be reversed, and the cause will be remanded to the latter court, with directions to enter a decree requiring the appellee Edwin Walker to account for said sums disallowed in this opinion, together with legal interest thereon from the time the bill was filed in this case, or so much thereof as may be necessary to pay and satisfy the amount which may appear to be due and unpaid upon the judgment of appellant, and also for the costs. Leave is given to the appellee Edwin Walker to prove any payments that have been made upon such judgment, or partial satisfaction thereof, and to both parties to introduce evidence on that subject.

*Reversed and remanded.*