## J. V. WEBER v. MARY A. AREND AND OTHERS.[1]

December 28, 1928.

No. 26,975.

See note in 67 L. R. A. 590; 12 R. C. L. 632; 2 R. C. L. Supp. 1463.

[1]Reported in 222 N. W. 646.

*Don V. Hinrichs* and *F. W. Foote,* for appellants.
*Oscar Hallam,* for respondent.

WILSON, C. J.

Appeal from an order denying a motion for a new trial.

On January 11, 1927, judgment was entered in an action based upon a contract dated December 9, 1924, in favor of plaintiff and against defendant Ray Arend (a son of defendants John Arend and Mary A. Arend) for $5,252.43. Execution was returned unsatisfied on April 21, 1927.

March 1, 1922, Ray Arend and his father purchased under a contract for deed lot 160, Union Park, in St. Paul. Each paid one-half of the payment when purchased as well as a portion of the subsequent payments. They have also equally contributed to the construction of additional buildings. The contract was recorded.

In January, 1926, Ray Arend transferred his interests under the contract to his mother. In May, 1926, the father transferred his interest therein to the mother.

The trial court found that the transfer from Ray Arend to his mother was made while he was in failing circumstances, without any consideration, previous negotiations or knowledge of the mother until after the transfer was made. She never took possession and never made any payments on the contract, but the father and son continued to receive the income and make the payments. It was also found that the transfer to the mother was made fraudulently with the intent and purpose of putting it beyond the reach of plaintiff.

Appellants challenge this last mentioned finding on the principle that the court cannot disregard the positive testimony of un-

impeached witnesses—relative to which the authorities are collected in O'Leary v. Wangensteen, 175 Minn. 368, 221 N. W. 430, to which may now be added Watson v. Goldstein, 176 Minn. 18, 222 N. W. 509. The rule is well established. Here we have only to consider whether the record is such as to invoke the application of the rule, or does the record disclose in reference to the testimony of the son and his parents improbabilities or contradictions furnishing reasonable grounds for not believing it to be true, or is this evidence irreconcilable to the facts shown by the record?

This transaction was between close relatives. In attempting to show consideration the claim was made that in September, 1924, the father loaned the son $2,500, which they say was procured by the father's mortgaging certain real estate. The claim is further made that on October 22, 1925, the parents drew $2,400 from a savings bank and loaned that to the son. It was withdrawn from the bank. This was six days after Ray was indicted as hereinafter mentioned.

The father's account book containing 152 pages and labeled "a journal" was put in evidence. The first 77 pages had been used, and in the chronological order the alleged loan of $2,500 to the son would have appeared at about page 40. It did not. It was entered near the back of the book on page 141 under a heading "John Arend to Ray Arend." The second alleged loan of $2,400 is charged to this same account as of October 22, 1925, but in its chronological place it would have been at page 51. The father had an account with his son Ray on page 60 and part of page 63 in which these loans might properly have been entered had they been as claimed. This account is indexed in the usual course of events. But the first mentioned account is not indexed where it would naturally have been indexed had the account actually been entered in September, 1924. Indeed we cannot find that it was indexed at all. These books are the strongest kind of evidence that they are neither real nor honest. The court was at liberty to infer reasonably that the book entries were manufactured. If so it is fair to infer that all three persons were connected with it. On the day when the $2,400 was drawn

from the bank the father's books show that he loaned his son Paul $1,900 and a son-in-law $2,000.

The transfer was to the mother. The book entry is in favor of the father. It was apparently his money. The mother did not collect the rent nor did she pay taxes or make the payments on the contract for deed. She says she was told of the transfer only after it was made. She said at the trial that she did not know anything about the father's assigning to her his interest in the property. She testified to loaning Ray $385 on the same day as the $2,400 was loaned. But this is not on the book at all. No note was given for any one of the alleged loans. The mother's verified answer, which is in evidence, states that the consideration was "received by the defendant Ray Arend simultaneously with the execution of said assignment and transfer and as part of the transaction." This statement is irreconcilable with her testimony given at the trial.

The father testified that Ray's interest in the real estate was worth $5,000. After it was transferred to the mother there was no change in the management. The income and expenses were handled just as though no transfer had been made to her. The father had also made an assignment to the mother in May but says it was a mistake and was intended for Ray and not for himself. But Ray had assigned his interest to her in January. This transaction is unexplainable. The father says that in January, 1926, he exchanged automobiles and paid a difference of almost $2,000 with currency which he claims was in the house. He does not disclose the source of this money or explain why it was not deposited as other moneys were. It was Ray's car that was turned in on the new car, and there are some circumstances in the record indicating that the new car was in fact Ray's. In January, 1927, the father told one Hannon that the property here involved had been turned over by Ray because he had gotten into some trouble and so that they could sell it. We must assume now that the court believed Hannon, and thereby is established a fact which alone is almost fatal to appellants' claim.

Ray Arend was arrested November 19, 1924, charged with a violation of the national prohibition act. He was put under a $10,000

bond and indicted in October, 1925. He pleaded guilty to the charge and was sentenced to federal prison for one year. Ray says he talked with his mother about transferring the property to her in payment of what he owed her. She tells a different version. The father said the transfer was also to pay the $2,500 which Ray owed him. Ray says nothing was said about the $2,500 debt. After much inconsistency Ray finally said that the transfer was to pay all he owed to both parents. Ray did not testify that he ever borrowed any of the alleged loans and makes no effort to show his use of such money when, if ever, he received it. His bank account is in evidence, but the money which he is supposed to have so borrowed is not identified with any entry in the bank book. Ray was connected with a failing business when he made the transfer. He was on notes that could not be paid. He was in a position in which persons are usually when they make fraudulent transfers. He was also under indictment to which he later pleaded guilty. He was facing a rather discouraging future. Perhaps he was also subject to financial penalties under the revenue laws in addition to the penalty served. The circumstances furnish a strong motive for the commission of fraud, the proof of which often rests upon circumstances. Here there is sufficient evidence to establish positively or to permit a reasonable inference of falsehood, false books, manufactured evidence, conviction of crime, contradictions, inconsistent statements, admissions, failure to pay a judgment; and not a single one of the three important witnesses stands uncontradicted or free from some of these discrediting elements.

We have not stated all but enough of the facts and circumstances in the record which show such improbabilities, contradictions, inconsistencies in the evidence and some such irreconcilable evidence that the whole record furnishes reasonable grounds for not believing the defendants, and the trial court was at liberty upon the record to reject defendants' version of the transaction as it did.

In actions of this character the rule is that the defendant cannot set up a defense which his grantor might have had to the original claim. Such a judgment cannot be impeached in a col-

lateral proceeding, except for fraud in its creation or continuance. Schmitt v. Dahl, 88 Minn. 506, 93 N. W. 665, 67 L. R. A. 590; Irish v. Daniels, 100 Minn. 189, 110 N. W. 968; Johnson v. Union Inv. Co. 149 Minn. 106, 182 N. W. 955; Olson v. Peterson, 152 Minn. 234, 188 N. W. 258; Schendel v. C. M. & St. P. Ry. Co. 168 Minn. 152, 210 N. W. 70; 3 Dunnell, Minn. Dig. (2 ed.) § 5143. Whatever may be the holdings in other states, this rule has been firmly established in this court; and we consider the rule working satisfactorily.

Affirmed.

[1]Reported in 222 N. W. 649.