COMMERCE BANK OF LEBANON, a corporation, Plaintiff-Respondent,

v.

HALLADALE A CORPORATION, a corporation, Larry Mahan, Beverly Ann Mahan, Larry G. Mahan, Trustee, Milton D. Mahan and Harold D. Mahan, Defendants-Appellants.

No. 11785.

Missouri Court of Appeals, Southern District, Division One.

June 17, 1981.

Gary A. Love, Love & Doran, Springfield, Jack L. Miller, Lebanon, for defendants-appellants.

Thomas J. O'Neil, Lebanon, for plaintiff-respondent.

FLANIGAN, Judge.

Defendants appeal from a judgment setting aside certain transfers, including an assignment of shares of stock and a deed. The trial court found that the transfers were fraudulent as to plaintiff Commerce Bank of Lebanon, ("the bank"), as a creditor of Harold M. Mahan, ("Harold"), and Frieda O. Mahan, ("Frieda"), his wife.

In 1974 the bank made loans to Harold evidenced by four notes which were covered by a continuing written guaranty signed by Frieda. The transfers, held to be fraudulent, were made by Harold and Frieda to defendants on August 15, 1975, or within a month of that date. Harold died on May 11, 1976, and Frieda died on October 12, 1976.

The transactions took place in Laclede County where the various parties resided. On January 25, 1977, the bank filed civil action No. 457 in the circuit court of that county, seeking collection of the balance due on the four notes. The two defendants in that action were the respective administrators of the estates of Harold and Frieda. In October 1977 the bank obtained a judgment in the amount of $28,077.91 against both administrators, and in November 1977 the probate court classified, approved and allowed the judgment as a claim against each of the two estates. The judgment remains unsatisfied.

In December 1977 the bank filed the instant action against six defendants. Three of the defendants are Larry Mahan, Milton D. Mahan, and H. D. Mahan, all sons of Harold and Frieda. The other three defendants are Beverly Ann Mahan (Larry's wife), Larry Mahan in his capacity as trustee under a trust created by Harold and Frieda on August 15, 1975, and a corporation, closely held by the Mahan family, with the name "Halladale A Corporation," ("Halladale").

The August 1975 transfers, which the trial court found to be fraudulent, were in this sequence:

(1) Harold and Frieda, by deed and assignment, transferred to Halladale the following: (a) A farm where Harold and Frieda resided and where they continued to reside following the transfer; (b) Harold and Frieda's rights as the unpaid sellers under a contract to sell two improved tracts in Lebanon, Missouri, (340 Elm and 360 Elm), to buyers named Wilsey, ("the Wilsey contract").

(2) Halladale issued 6,899 shares of its stock to Harold and Frieda.

(3) Halladale issued 871 shares of its stock to Larry Mahan; these shares were then transferred by Larry to himself and his wife Beverly.

(4) Harold and Frieda, as settlors, created a trust in which Larry Mahan was trustee. Harold and Frieda transferred to the trustee, as the trust property, the 6,899 shares of Halladale stock previously issued to Harold and Frieda. Harold and Frieda were to receive the net income from the trust property during their respective lives and upon the death of the survivor the trust property was to be divided among their three sons.

In *Reyburn v. Spires*, 364 S.W.2d 589 (Mo.1963), a deed was attacked as being fraudulent as to a judgment creditor of the grantor. The deed was executed and delivered to the grantee prior to the rendition of the judgment in favor of the creditor and against the grantor. The court said that to

obtain a decree setting the deed aside the judgment creditor was required to prove the following: " 'First, that the conveyance was made for an inadequate consideration; second, that the conveyance rendered the grantor insolvent; third, that plaintiff *at the time of the conveyance* was a creditor of the grantor.' " (Emphasis added) *Reyburn*, at p. 592.[1]

Defendants' principal point is that the trial court erred in setting aside the transfers because "the bank failed to prove that it was a creditor of Frieda; thus, as all asserts conveyed to the trust were held as tenants by the entireties, the transfers cannot be fraudulent as to a creditor of Harold alone." In support of their principal point, defendants try to attack the validity of the bank's judgment against the administrator of Frieda's estate. This attack is based on the theory that Frieda's guaranty, with respect to Harold's notes, was unenforceable. Defendants seek to go behind the judgment of the bank against Frieda's administrator and to show that Frieda's administrator (and Frieda in her lifetime) could have successfully defended the bank's suit to enforce the guaranty.

"A judgment obtained without fraud or collusion, and which concludes the debtor, whether rendered upon default, confession, or after contestation, is upon all questions affecting the title to his property, conclusive evidence to establish the relation of creditor and debtor between the parties to the record and the amount of the indebtedness, and cannot be collaterally impeached by third parties in a subsequent suit in which such relation and indebtedness are called in question. The grantee cannot show error or irregularity in the rendition of the judgment, or laches in making defense against it, or that the court was mistaken as to the law and the rights of the parties, in the absence of fraud or collusion." Moore on Fraudulent Conveyances, Vol. 2, § 76, p. 831.

■ Where, as in the instant action, the judgment in favor of the bank against the administrator of Frieda's estate was rendered by a court of competent jurisdiction, and there is no claim that the judgment was obtained by fraud or collusion, the judgment is conclusive as to the relation of debtor or creditor between the bank and Frieda's administrator and the amount of the indebtedness, and these matters cannot be collaterally impeached by transferees of Frieda in this action to set aside the transfers as fraudulent; the transferees, defendants here, are not permitted to set up defenses which the judgment debtor (transferor) interposed unsuccessfully or failed to interpose.[2]

In *Johnson v. Stebbins-Thompson Realty Co.*, 177 Mo. 581, 76 S.W. 1021 (1903), a case

1. Sections 428.010 and 428.020 RSMo 1978 deal with transfers in fraud of existing and subsequent creditors. For a discussion of subsequent creditors, not the situation here, see *Watson v. Harris*, 435 S.W.2d 667 (Mo.1968); *Snyder v. Free*, 114 Mo. 360, 21 S.W. 847 (1893).

2. *First Nat. Bank v. Commissioner of Internal Revenue*, 112 F.2d 260, 263 (7th Cir. 1940); *Anderson v. Hultberg*, 247 F. 273 (8th Cir. 1918); *Clark v. Anthony*, 31 Ark. 546; *Ohio Electric Car Company v. Duffey*, 48 Cal.App. 674, 192 P. 298 (1920); *Loring v. Dunning*, 16 Fla. 119; *McMannomy v. Chicago, etc. R. Co.*, 167 Ill. 497, 47 N.E. 712; *Scott v. Indianapolis Wagon Works*, 48 Ind. 75; *Strong v. Lawrence*, 58 Iowa 55, 12 N.W. 74 (1882); *Larson v. Tweten*, 185 Minn. 366, 241 N.W. 43 (1932); *Weber v. Arend*, 176 Minn. 120, 222 N.W. 646 (1928); *Irish v. Daniels*, 100 Minn. 189, 110 N.W. 968; *Schmitt v. Dahl*, 88 Minn. 506, 93 N.W. 665 (1903); *Ferguson v. Kumler*, 11 Minn. 104 (Gil. 62); *Swan v. Smith*, 57 Miss. 548; *Sheridan v. McCormick*, 39 N.D. 641, 168 N.W. 59 (1918); *Jenness v. Berry*, 117 N.H. 549; *Decker v. Decker*, 108 N.Y. 128, 15 N.E. 307 (1888); *Dewey v. Moyer*, 9 Hun. 473 (aff. 72 N.Y. 70 (aff. 103 U.S. 301, 26 L.Ed. 394)); *Candee v. Lord*, 2 N.Y. 269, 274, 51 Am.Dec. 294; *Swihart v. Shaum*, 24 Ohio St. 432; *Dillon Tire Service, Inc. v. Pope*, 133 S.E.2d 813, 815 (So. Car.1963); *Minnesota Thresher Mfg. Co. v. Schaack*, 10 S.D. 511, 74 N.W. 445; 37 C.J.S. Fraudulent Conveyances § 349b, p. 1182; 37 Am.Jur.2d Fraudulent Conveyances § 178, p. 843; Black on Judgments (2d Ed.) Vol. II, § 605, p. 918.

*Contra*, *Houston v. Campbell*, 151 Ga. 180, 106 S.E. 87 (1921); *Omaha Cattle Loan Co. v. Shelly*, 89 Neb. 502, 131 N.W. 926 (1911); *Hillsboro Nat. Bank v. Garbarino*, 82 Or. 405, 161 P. 703 (1916).

which is factually distinguishable, the court at 1027–1028 cited with approval, and quoted extensively from, many of the cases cited in footnote 2, reflecting the majority view. The court expressed its agreement with the matters contained in the following paragraph.

Solemn adjudications would be of little force if judgment debtors, owning property to which the lien of the judgment did not attach, could donate it and the donee could then compel the judgment creditor to relitigate questions which were appropriately triable in the original proceeding. This, in effect, would be an improper method of securing a new trial without resorting to the usual legitimate course of filing a motion for new trial in the original proceeding. There is no validity in the argument, which instant defendants make, that they are not bound by the judgment because they are not in privity with the judgment debtors. Defendants claim the property in controversy under the judgment debtors and thus are in privity with them. At the time of the transfer, the land [and stock] was liable for the payment of the debts of the grantors. The conveyance being voluntary, the grantees took the property subject to the right, implied by law, in existing creditors, to have it appropriated to the payment of such demands as might in good faith be adjudged in their favor against the grantors. The judgment is conclusive, not only as between the parties to it, but as against the grantees to whom the judgment debtors conveyed the property sought to be subjected to its payment. This conclusive effect of the judgment is not affected by the fact that it was obtained after the making of the conveyance. The donees or grantees cannot inquire into the merits of the judgment or allege error which the judgment debtors could have corrected only by an appeal. Whether a defense could have been made which would have prevented the rendition of the judgment is not an open inquiry in the action against the grantees.

Defendants are wrong in their contention that the bank failed to prove that it was a creditor of Frieda. The foregoing authorities demonstrate that defendants' principal point is based on an invalid premise. It is unnecessary to consider defendants' additional points which are similarly based.

In *Reyburn v. Spires*, 364 S.W.2d 589 (Mo.1963), the court pointed out that a judgment obtained by a judgment creditor against the grantor is admissible, in a subsequent action by the judgment creditor against a grantee of a conveyance antedating the judgment, but that "ordinarily a judgment constitutes proof of a debt only from the time of its rendition." The court added, however, that in the action against the grantee, a court of equity was authorized to determine whether, at the time the conveyance was made, the grantor in the deed was indebted to plaintiff and whether the conveyance rendered the grantor insolvent. In *Reyburn* there was no evidence to show that the debt, on which the judgment against the grantor was based, antedated the allegedly fraudulent conveyance. The court also said that the petition in the action against the grantor would not, on proper objection, be admissible, or constitute proof that the debt antedated the judgment.[3]

In the instant case the bank introduced into evidence the four notes given by Harold, and bank officers testified to the making of the loans evidenced by the notes. The bank also introduced evidence showing that Frieda's guaranty, as well as the notes, antedated the August 15, 1975, transfers to defendants. Unlike the situation in *Reyburn*, the instant record contains evidence showing that the liabilities on which the judgment in civil action No. 457 was based pre-existed the challenged transfers.

3. "[I]t does not seem very logical to hold that the pleadings and judgment in a cause cannot be read in evidence against a stranger to the record to establish the indebtedness for which the judgment was rendered prior to its rendition, because, as to him, they constitute res inter alios acta, and at the same time hold that these are admissible in such case to prove an indebtedness at the time the judgment was rendered." *Jamison v. Baggot*, 106 Mo. 240, 16 S.W. 697, 701 (1891).

In *Barnard v. Barnard*, 568 S.W.2d 567 (Mo.App.1978), this court stated several familiar and relevant principles. They include: Every conveyance made with intent to hinder, delay or defraud creditors is void as to those creditors. § 428.020 RSMo 1978. Although plaintiff has the burden of proof as to the fraudulent nature of the conveyances, a voluntary conveyance, one lacking valuable consideration, raises a presumption of fraud as to existing creditors. When a creditor presents evidence of such a voluntary conveyance by a debtor, accompanied by other badges of fraud, the burden of producing evidence to establish the good faith of the transaction shifts to the grantee or donee. Fraud, being difficult to establish by direct proof, may be shown by circumstantial evidence. The badges of fraud include a conveyance to a near relative, a conveyance in anticipation of suit, inadequacy of consideration, transfer of all or nearly all of the debtor's property, insolvency, and retention of possession by the debtor.

In *Conrad v. Diehl*, 344 Mo. 811, 129 S.W.2d 870 (1939), the court stated that the badges of fraud are numerous and while evidence of any one badge may not suffice, a combination of badges does "warrant an inference of fraud, especially where there is a concurrence of so many of these badges."

■ Defendants attack various legal and factual findings contained in the trial court's decree. It is unnecessary for this court to rule upon the correctness of those findings, because in this court-tried case the decree will be sustained if the result is correct even if based upon an erroneous finding, *Lalumondier v. County Court of St. Francois County*, 588 S.W.2d 197 (Mo.App. 1979) and even if the decree contained erroneous legal or factual reasons for the result reached. *Kenilworth Ins. Co. v. Cole*, 587 S.W.2d 93 (Mo.App.1979).

The record is voluminous. Many documentary exhibits, totaling 276 pages, were introduced. In general the record shows that the August 15, 1975 transfers were fraudulent as to the bank. The assets transferred represented, from the value standpoint, almost all of the property then owned by Harold and Frieda. Halladale had no significant assets other than those which it then received from Harold and Frieda. Harold and Frieda received little, if any, valuable consideration for the transfers.[4] There was a close family relationship between the transferors and the transferees. Halladale had been defunct for over three years and the rescission of the forfeiture of its corporate charter was effected to implement the general scheme. Harold and Frieda continued to live on the land which they conveyed to Halladale. Corporate expenses and the individual living expenses of Harold and Frieda were handled through the same bank account. Shortly before the challenged transfers the bank had attempted, unsuccessfully, to obtain payment of the notes. The estate tax return filed by Frieda's administrator listed assets totaling $94,288.25, of which $90,790.84 consisted of "value of stock in the trust." The latter item represents the Halladale stock held by the trust of which Harold and Frieda were settlors. The estate tax return filed by Harold's administrator contained comparable figures. Both Harold and Frieda incurred substantial debts to other creditors in the last two years of their respective lives.

That portion of the trial court's decree adjudging the attacked transfers to be in fraud of plaintiffs' rights as an existing creditor is fully supported by the record.

■ Defendants' final point is that the trial court erred in holding that the issuance, on August 15, 1975, of 871 shares of Halladale stock to Larry Mahan was fraudulent as to the bank. This point is based upon defendants' version of the facts and it is invalid because the trial court was not required to accept that version and indeed was justified in rejecting it.

4. Defendants make no claim that the mechanics of the transfers, including the receipt by Harold and Frieda of the Halladale stock and the transfer of that stock to the trust, alters the general picture. See 85 A.L.R. 133 [Transfer of property by debtor to corporation, in consideration of its stock, as a fraud on creditors.]

In essence defendants claim that Larry Mahan contributed $2,000 to the purchase of the "Hatten property" which was the tract known as 360 Elm. The Hatten property was one of the tracts covered by the Wilsey contract which Harold and Frieda entered into with the Wilseys in December 1973. In August 1975 Harold and Frieda transferred to Halladale their rights as the unpaid sellers under the Wilsey contract.

Defendants produced no cancelled check or other documentary evidence to support Larry's testimony, which the trial court was not required to believe, that he had contributed $2,000 (one-half of the original purchase price paid to prior owner Hatten) at the time Harold and Frieda acquired title to the Hatten property. At no time did Larry have record title to 360 Elm. That title remained in Harold and Frieda until they conveyed it to Halladale. It is true that Larry offered into evidence a deed dated April 4, 1972, in which Harold and Frieda, as grantors, conveyed an undivided one-half interest in 360 Elm to themselves and an undivided one-half interest to Larry. This deed, however, was never recorded. Under cross-examination by the bank's attorney, Larry was unable to explain why that deed was not recorded and he "did not recall" whether Harold had instructed him not to record it. Later, when 360 Elm was included in the Wilsey contract, Larry was not a party to that transaction. Shortly after Larry allegedly contributed $2,000 to the acquisition of 360 Elm, it was listed as an asset owned by Harold and Frieda on financial statements given to the bank in support of a loan application.

This court's review of the trial court's judgment is governed by the standards contained in Rule 73.01 as construed in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). Gauged by that standard, the trial court's finding that the transfer of 871 shares was fraudulent is supported by the record.

The judgment is affirmed.

GREENE, P. J., and TITUS, J., concur.