## Charles G. Hutchinson v. Jennie C. Hutchinson.

1. SOLICITORS' FEES—*Court May Form an Independent Judgment as to the Amount.*—The court, in determining the amount of solicitors' fees, may consider its own experience in such matters, in arriving at a conclusion as to what is a usual and customary, as well as reasonable allowance for the fees in question.

Divorce.—Order for solicitors' fees. Appeal from the Circuit Court of Cook County; the Hon. EDMUND W. BURKE, Judge presiding. Heard in this court at the March term, 1902. Affirmed in part and reversed in part. Opinion filed January 8, 1903.

JAMES MAHER and FRANK P. BLAIR, attorneys for appellant.

BANGS, WOOD & BANGS, attorneys for appellee.

MR. JUSTICE WINDES delivered the opinion of the court.

This is an appeal from an order entered by the Circuit Court September 17, 1901, for the solicitors' fees of the appellee for services to be rendered by them on an appeal from this court's judgment affirming a decree of separate maintenance rendered by the Circuit Court in favor of appellee and against appellant. The allowance is $2,000.

Appellee made two motions to dismiss this appeal, which were reserved to the hearing. The first motion was to dismiss it because the appeal bond was not filed within the time allowed by the Circuit Court for filing the same. A cross-motion suggesting diminution of the record and asking leave to supply the same was made, and an additional record presented, which appellant asks leave to file. The additional record shows that the appeal bond was filed within the time allowed by the Circuit Court. The cross-motion is therefore allowed; the clerk will file the additional record, and the motion to dismiss the appeal is denied.

The other motion made by appellee to dismiss the appeal, is for the alleged reason that it fails to appear by the record that the appeal bond filed in the Circuit Court was ever approved by that court. The appeal bond is indorsed

as follows: " Approved, Edmund W. Burke, Judge," with a date corresponding to the date of the filing of the bond. For the reasons stated in our opinion this day filed in three other appeals between the same parties, this motion to dismiss this appeal is denied.

The record shows that appellee moved the court for an allowance for the solicitors' fees in question, and in support of the motion presented two affidavits, one of an attorney who stated that he was familiar with the issues and character of the case and the work involved in presenting it to the Supreme Court, and that $2,000 was a fair and reasonable, usual and customary fee for appellee's solicitors in the Supreme Court; the other being the affidavit of the appellee herself that appellant was worth $500,000 and in receipt of an annual income of more than $16,000. Opposed to these affidavits there was one by the appellant that his property was not worth in the market more than $250,000; that a great portion of it was unimproved and yielded no income; that he was at heavy expense to take care of it, and that his annual income did not exceed the sum of $10,000.

On a further hearing of the motion the affidavits of four practicing attorneys at the bar of Cook County were read on behalf of appellant in opposition to the motion, to the effect, in substance, that the reasonable, customary and. usual fees of appellee's solicitors for services in the Supreme Court in defending the appeal were worth not to exceed $750, one of the affidavits placing the amount at $350 to $500, one at $500 to $600, and another at $500 to $700. It appears that these affidavits were based upon the fact that the question at issue in the Supreme Court was a common law marriage, and that there was to be an oral argument in the case upon behalf of appellee; that these attorneys had explained to them the history of the case as presented in the Circuit and Appellate Courts, and that the solicitors' fees for services in those courts had been paid.

Still later, on a further hearing of the motion, appellee presented three additional affidavits of lawyers in active

practice at the Chicago bar, who, in substance, stated that they were familiar with the character and issues of the case in the Supreme Court, and that a fair and reasonable, usual and customary fee for appellee's solicitors for presenting the case to that court was, in their opinion, $2,000.

It further appears from the record, though only by inference from the abstract, that appellee's solicitors were allowed and paid—no objection being made to such allowance by appellant—for services in presenting the case to the Appellate Court on appeal from the Circuit Court, the sum of $1,000, and that the same solicitors who appeared for appellee in both the Circuit and Appellate Courts were to represent the appellee in the Supreme Court.

It further appears by statements made upon the hearing by the chancellor, that he would have been well satisfied in allowing for services for appellee's solicitors in the Supreme Court the sum of $1,500, and seems to have been of the opinion that he might make an allowance that was not " unreasonable." We think the duty of the chancellor was to make an allowance based upon what was the usual and customary, as well as reasonable charges of solicitors at the Chicago bar for like services, and that he should not have been controlled entirely by the affidavits of the several solicitors in support of the motion. The chancellor had the right to consider his experience, and this court, in reviewing the order, may consider its own experience in such matters, in arriving at a conclusion as to what was a usual and customary as well as reasonable allowance for the fees in question. Metheny v. Bohn, 164 Ill. 495–8; McMannomy v. R. R. Co., 167 Ill. 497–510.

In the Metheny case the court, in passing upon the question of solicitors' fees, state the rule and duty of the chancellor to be to " exercise his own judgment and not be wholly governed by the opinions of attorneys as to the value of their services," and also say that the chancellor has the requisite skill and knowledge to form some idea as to what is a fair and reasonable compensation, and while he should consider the opinions of witnesses and evidence

of the sum usually charged and paid for such services, he should, at the same time, exercise his own judgment.

In the McMannomy case there is quite a full discussion of this subject, and the court say: "While opinions are receivable and entitled to due weight, the courts are also well qualified to form an independent judgment on such questions, and it is their duty to do so;" and held that while the opinions of solicitors as to what was reasonable and proper were sufficient to justify the allowance made by the court, the other evidence in the case more nearly agreed with the court's judgment as to the usual charge and true value of the services rendered and in question. The court accordingly reduced an allowance of $85,000 to $50,000. The different opinions of solicitors in that case ranged from $25,000 to $150,000.

So here, while the affidavits on behalf of the appellee as to what was a usual, customary and reasonable charge would justify the allowance made by the chancellor, from the whole evidence, considered in the light of our experience as to such matters, we think that an allowance of $1,000 more nearly accords with equity, as well as with our judgment as to what is a usual, customary and reasonable fee for like services as those to be rendered by appellee's solicitors. We are mainly influenced in reaching this conclusion by the fact that appellee's solicitors represented her in this court, on the appeal of the case to this court, for which they were allowed and paid $1,000, and necessarily in representing the appellee in both the Circuit and the Appellate Courts they became familiar with all the facts and questions in the case, and their services could not be worth more in the Supreme Court than in this court.

The order is therefore affirmed as to $1,000 and reversed as to the remainder. Appellant will pay the costs of this court.

Affirmed in part and reversed in part.