## Chicago and Southern Traction Company v. Martha A. Gaines et al.

### Gen. No. 4,687.

1. ATTORNEY'S FEES—*what should be allowed upon dismissal of petition to condemn land.* Upon the dismissal of a petition to condemn land, attorney's fees should be allowed to the several defendants who have employed counsel, for the amount of fees actually paid, if reasonable, or for the amount of fees for which such several defendants have become liable, if reasonable, to the extent of the work proper to be done and actually done up to the time of such dismissal. No fees, however, should be allowed for services rendered in preparation for a trial upon the merits where the dismissal was ordered before it became necessary to make such preparation.

Condemnation proceeding. Appeal from the Circuit Court of Will county; the Hon. ALBERT O. MARSHALL, Judge, presiding. Heard in this court at the April term, 1906. Reversed and remanded. Opinion filed October 16, 1906.

J. L. O'DONNELL and T. F. DONOVAN, for appellant; CHARLES F. DAVIS, of counsel.

F. D. JORDAN, A. F. KNOX, E. C. AKIN, J. T. DONAHOE, COLL McNAUGHTON, J. A. McKEOWN, BYRAN HUTCHINSON, C. E. ANTRAM, D. F. HIGGINS, EDWARD CORLETT and GEORGE J. CLARE, for appellees.

MR. JUSTICE WILLIS delivered the opinion of the court.

The Chicago & Southern Traction Company filed a petition in the Circuit Court of Will county to condemn a right of way for a street and interurban railway across many tracts of land. The owners of the lands were summoned, and different owners so made defendants employed different attorneys, who filed written appearances for their several clients, and also filed written motions to dismiss the petition for various reasons set forth, but chiefly that the petition did

not show a state of facts which would authorize the condemnation of a way across these lands for a street and interurban railway. Thereupon the petitioner reorganized under the general railroad law, and dismissed the petition to condemn, at its costs, and filed a new petition against the same defendants to condemn the same way across the same lands, which new petition was filed in the County Court of Will county, and the land owners were again summoned in that case. Upon the dismissal of said original petition in the Circuit Court the several land owners applied for an allowance for attorney's fees and expenses. After some delay proofs were heard and an order was entered making a separate allowance to each of twelve land owners or sets of land owners. Petitioner prayed and was granted an appeal to this court from each separate allowance, perfected each appeal, filed one bill of exceptions, and filed in this court twelve records, each apparently identically the same in every particular, except that each contains a different appeal bond, and that on each record a different title precedes the assignment of errors. Afterwards by stipulation the twelve appeals were consolidated in this court.

Appellant seems to contend that as it did not dismiss its petition with intent to prejudice appellees, and as there was no trial, they should not be allowed attorney's fees. Sanitary Dist. v. Bernstein, 175 Ill. 215, holds that the act here relied upon includes any dismissal of the petition. Appellant contends that there should have been only one joint allowance to all appellees. We hold that under the language of the act those appellees who had joined in hiring an attorney and had jointly paid an attorney or had become jointly liable to pay an attorney, were entitled to have a joint allowance, if the sum was just, and that any appellee who separately hired an attorney and paid him for the service, or became separately liable

to pay him, was entitled to a separate allowance, if the sum was just.

That part of section ten of the Eminent Domain Act here involved is as follows: "In case the petitioner shall dismiss said petition before the entry of such order, * * * then such court or judge shall, upon application of the defendants to said petition, or either of them, make such order in said cause for the payment by the petitioner of all costs, expenses and reasonable attorney's fees of such defendant or defendants paid or incurred by such defendant or defendants in defense of said petition, as upon the hearing of such application shall be right and just, and also for the payment of the taxable costs." The taxable costs have been adjudged against petitioner and are not here questioned. The petition stated that petitioner was a corporation authorized to build a street railway through certain named cities and villages and to build an interurban railway through and between said cities and villages. It did not assert any other or greater authority. It did not set up any special facts or circumstances which, at this part of its line, required it to depart from the street or highway and traverse the many tracts of land owned by the appellees. Its only allegation having any possible bearing upon that subject, was "that the above described property is necessary for the tracks, switches, side tracks and other appliances required for the operation of petitioner's railroad." This was a mere conclusion of the pleader, not based upon any facts set forth. If petitioner was a street railroad corporation, it could only go outside the highways to avoid some obstruction, and none was alleged. It therefore could not maintain this proceeding, unless it was a corporation combining the corporate powers of a street railway and a general commercial railroad. This depended upon the statutes of our state, and could be hardly said to be a doubtful proposition.

Chicago & Southern Traction Co. v. Flaherty, 222 Ill. 67. As appellees all moved to dismiss the petition for lack of authority to condemn these lands, we are of opinion that they could not justly charge against the petitioner the expense of preparing for trial before the motions to dismiss had been heard and decided. Before the motions were argued, the petitioner re-organized as a general railroad corporation, dismissed this proceeding and began another suit to condemn the same lands under its newly acquired authority. Under such circumstances we are of opinion that petitioner was only liable in this cause for attorney's fees for preparing and filing the appearances of the several appellees and the several motions to dismiss the petition, and for such preparation as their several attorneys made for the hearing and argument of the motions to dismiss. They were entitled to recover from petitioner what they had either jointly or sever-ally paid to their respective attorneys for that serv-ice, or had become liable to pay therefor either by express or implied contract, so far as the same should appear to be right and just.

The lowest aggregate sum testified to by the attor-neys for the several appellees, and by the other attor-neys called by them as experts, amounted to $1,025, and the highest estimate amounted to $1,190, for the services rendered. The extravagance of such charges is evident when they are added together. The total of the sums allowed by the court was $435. We fully approve this reduction. But after carefully study-ing the testimony offered by appellees we find that in no case was a basis laid for an allowance for those services for which petitioner can justly be held liable in this case. In every case, except that of Arnold, the sum testified to covered a visit to the prem-ises, and a preparation for a trial of the case upon the merits. One attorney appeared alone for seven sets of land owners. Of course he could require but

one preparation to argue the motion to dismiss, and it would not be reasonable or just that appellant should pay for more than one such preparation by him. He did not show how much time he spent in preparing for that motion, but he testified to the value of his service for each client separately, and the sum for all his clients was $500, and his clients were allowed $210 therefor. There is no proof that his clients have paid him any such sum for that service or that they have incurred liabilities to that amount for that service. He had separate maps prepared for six of these tracts, paying $10 for each of five maps and $17.50 for another. He included in his estimate of the value of his services a study of the subject of consequential damages and a preparation of two cross-petitions which he did not file. Several of the attorneys included in their estimates an examination of the title of their respective clients. For none of these services would it be just to hold petitioner liable in this case. They bore no relation to the motion to dismiss. Appellees will have the full benefit of such preparation in the new suit to condemn, where the proof shows the same attorneys have again appeared. Except in Arnold's case, no proof was made as to the time spent in preparing and filing the motion to dismiss and in preparing for the hearing of that motion, nor any proof as to the value of such services. With no proof as to how far the several attorneys had gone in that preparation nor how much time they had spent on that subject, there was no proof which petitioner could meet or controvert as to the necessity for spending so much time and labor in such preparation nor as to the value of such services. In Arnold's case the time so spent was shown, but he did not show whether he had a contract with his attorney for this service. For all that appears his attorney may have agreed to attend to this motion for his client for some definite sum, or he may have since agreed with his attorney what that

compensation should be, or his attorney may have since made a charge against him therefor; or Arnold may have paid his attorney in full thereof; or his attorney may have agreed not to require anything for this service, because of his retention in the new suit. If there was such a prior contract or subsequent charge, agreement, payment, or settlement, Arnold could not recover more than the sum which he so paid or became liable to pay for said service. It was essential that each defendant claiming an allowance should show what attorney's fees he had paid or incurred for this service. Chicago & Southern Traction Co. v. Flaherty, *supra*. Most of the appellees did not show that they had not paid their attorneys for this service, except that the testimony for one of said appellees might perhaps justify the inference that payment had not been made. The attorney for one appellee testified that he was not sure that he could recover anything from his client for this service, under the arrangement existing between them.

The real questions involved were what attorney's fees had these several appellees paid, or what would they have to pay to their respective attorneys, for preparing and filing their appearances and their motions to dismiss, and for making such preparations to argue said motions as they did make before the dismissal, and were such attorney's fees reasonable and just? These questions seem to have been lost sight of in putting in the proofs, which were almost wholly directed to a very general statement of the entire service rendered, without showing how much of that time and labor was spent in preparation for a hearing upon the motion to dismiss, and to the question what would be a customary charge for the entire service rendered. The proofs for appellees, Arnold and Steger, were the only ones that were at all directed to the true issues. As this matter must be heard again in the court below, we suggest that another element was omitted in all the proofs, though we should not

reverse the present allowance for that omission. Where there is no contract and has been no payment or settlement or charge, it is not sufficient to prove merely what are the usual and customary charges for such legal services in the court and county where they were rendered. The inquiry should be what is usually and customarily charged and paid for such services in such court as between parties competent to contract, or where the fee is the subject of contract. Reynolds v. McMillan, 63 Ill. 46; L., N. A. & C. Ry. Co. v. Wallace, 136 Ill. 87; Metheny v. Bohn, 164 Ill. 495; McMannomy v. C. D. & V. R. R. Co., 167 Ill. 497; Dorsey v. Corn, 2 Ill. App. 533.

The consolidation authorizes us to determine whether appellees should pay the costs in all twelve appeals. As already stated, the twelve records are substantially alike. The order appealed from covered but three pages; there was but one bill of exceptions, which included all the proofs relating to each allowance; and we are of opinion appellant should have filed one record, showing the perfection of each appeal, and should have asked leave to assign all the errors upon that one record. The cost of each of these twelve records is taxed at $50 in this court, and we presume that appellant paid the clerk $10 upon filing each record, making an original outlay of $720 besides any other costs incurred in each case before the consolidation. This would cast about as severe a burden upon appellees, as appellees sought to cast upon appellant by the proofs they introduced. The order will be that all the appellees pay only the costs taxed in No. 4,687, Chicago & Southern Traction Co. v. Gaines, et al., both before and since consolidation, including the cost of one record, and that appellant do not recover the costs advanced by it in the other eleven cases.

The order of the court below as to all the appellees is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*