County of Cook of the State of Illinois, Appellant, v. Chicago Copper and Chemical Company, Appellee.

Gen. No. 41,960.

Heard in the second division of this court for the first district at the October term, 1941. Opinion filed May 14, 1942.

GERALD R. GORMAN, of Chicago, for appellant; JOHN L. LENIHAN, of Chicago, of counsel.

ROBERT F. DEWEY, of Chicago, for appellee.

MR. JUSTICE FRIEND delivered the opinion of the court.

The County of Cook instituted eminent domain proceedings by which it sought to acquire a portion of the property of the Chicago Copper & Chemical Company, in Blue Island, Illinois, for public use. Respondent filed a traverse and motion to dismiss the petition and the cause was thereafter dismissed as to it on motion of the county. On application for costs, expenses and attorneys' fees, the court allowed respondent $1,000 for attorneys' fees, $100 for services rendered by a real estate expert and $350 expenses incurred in the preparation of plans by a surveyor. No complaint is made as to the latter two items, but the county appeals from that part of the order awarding respondent $1,000 for legal services.

The petition for condemnation was filed August 1, 1939. Respondent thereafter appeared by Alice Greenacre and Richard J. Stevens, its attorneys, who on September 14, 1939 filed a traverse and motion to dismiss the petition, which denied that the premises sought to be acquired were necessary and desirable for the uses proposed; denied that petitioner had the lawful right to take or acquire the premises for the uses and purposes sought; denied that petitioner had made sufficient or any bona fide attempt to agree with respondent as to the compensation to be paid for its property; and moved to dismiss the petition for several reasons specifically stated in the motion.

Counsel who filed their appearance for respondent and who had prepared the traverse and motion to dismiss were subsequently released and November 4, 1939 Howard F. Bishop was retained because respond-

ent desired to avail itself of a specialist in this type of litigation. Upon the termination of Miss Green-acre's and Mr. Stevens' services, they rendered a bill to respondent for professional services, representing 66 hours of time spent, for which respondent paid them $462, and an item of $52 for money expended, aggregating $514. Bishop entered his appearance in the proceeding December 14, 1939 and on that day his associate appeared in court on a motion for substitution of counsel and a change of venue, which was allowed. When the parties appeared before the court on that day Mr. Gorman, representing the county, stated to the court that ''I have this morning advised counsel for the defendant here that the County proposes to dismiss it as to the party that this counsel represents,'' and he suggested that the matter be postponed until February 1, 1940 to afford the county time to act on the proposal. Some discussion ensued as to whether the order for substitution of counsel ought to be entered at that time in view of the contemplated action of the county in dismissing the proceeding as to respondent, but the order for substitution was eventually allowed and entered and counsel then stipulated that no further expense would be incurred for legal services after that date. The petition was amended and respondent and the land which was sought to be taken from it were dismissed from the petition. In November 1940 the application for the allowance of costs, expenses and attorneys' fees was filed and a hearing thereon was had in February 1941.

As the principal ground for reversal it is urged that where a petition to condemn has been dismissed, respondent is entitled to recover only such reasonable attorneys' fees for services as were necessarily rendered in connection with the preparation of the appearance, the traverse and motion to dismiss and for hearing and argument thereon, and it is argued that the court erred in allowing respondent's counsel to go far be-

yond this scope by adducing evidence of services rendered in preparation of the cause for trial on its merits. The application for the allowance of costs, expenses and attorneys' fees in this proceeding is predicated on ch. 47, sec. 10 of the Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 109.255], which contains the following pertinent provision:

"Provided, That in case the petitioner shall dismiss said petition before the entry of such [judgment] order or shall fail to make payment of full compensation within the time named in such order, that then such court or judge shall, upon application of the defendants to said petition or either of them, make such order in such cause for the payment by the petitioner of all costs, expenses and reasonable attorney fees of such defendant or defendants paid or incurred by such defendant or defendants in defense of said petition, as upon the hearing of such application shall be right and just, and also for the payment of the taxable costs."

The scope of the services for which respondent may claim fees is defined in the early case of *Chicago & Southern Traction Co. v. Gaines,* 129 Ill. App. 160, and respondent's counsel cites no cases indicating that the limitations placed on the foregoing statute have since been extended by any court of review. The facts in that case are strikingly similar to the proceeding at bar. Respondents there had also filed motions to dismiss. Subsequently they sought recovery for their costs, expenses and attorneys' fees, and their testimony with respect to the services rendered was not confined to the preparation of the appearance, motion to dismiss and for a hearing on the motion, but also included a study of the subject of consequential damages, a preparation of two cross petitions which were not filed, examination of title of their respective clients and other matters not contemplated by the statute. In discussing the scope of this testimony the court said:

"As appellees [respondents] all moved to dismiss the petition for lack of authority to condemn these lands, we are of opinion that they could not justly charge against the petitioner the expense of preparing for trial before the motions to dismiss had been heard and decided. . . . we are of opinion that *petitioner was only liable in this cause for attorney's fees for preparing and filing the appearances of the several appellees and the several motions to dismiss the petition, and for such preparation as their several attorneys made for the hearing and argument of the motions to dismiss.*" (Italics ours.)

In commenting upon the character of the testimony which had no direct relation to services rendered in filing respondents' appearances, motions to dismiss and arguments thereon, the court observed that this evidence "bore no relation to the motion to dismiss" and said that "The real questions involved were what attorney's fees had these several appellees paid, or what would they have to pay to their respective attorneys, for preparing and filing their appearances and their motions to dismiss, and for making such preparations to argue said motions as they did make before the dismissal, and were such attorney's fees reasonable and just? These questions seem to have been lost sight of in putting in the proofs, which were almost wholly directed to a very general statement of the entire service rendered, without showing how much of that time and labor was spent in preparation for a hearing upon the motion to dismiss, and to the question what would be a customary charge for the entire service rendered." On the authority of the foregoing decision there can be no doubt that the scope of the testimony offered by respondent's counsel in the case at bar should have been limited by the court to services rendered for preparing and filing respondent's appearance, preparing the traverse and motion to dismiss and such preparation as its attorneys made for

the hearing and argument thereon. The record discloses, however, that the court allowed much greater latitude. The services to which Bishop testified included inspection of the property with his client and the real estate expert employed, consideration of whether the proper kind of offer had been made, the question of damages to the remainder, conferences with surveyors, and the examination of various records of the county commissioners involving the question of extending the proposed highway over certain railroad tracks. He testified that he had appeared in court on five occasions, for substitution of attorneys, on dismissal of the case and on motion for change of venue and continuances thereon. He said that his services consumed 100 hours outside of the court appearances, which were itemized as follows:

```
Examination of plans  ..................10 hours
Examination of premises ................25 hours
Checking records of county commissioners.10 hours
Examining law  ..................20 to 25 hours
Examining  Commerce  Commission  pro-
    ceedings`  ...........................10 hours
Checking  up  viaduct  and  determining
    whether  the  proceeding  would  close  up
    and  vacate  streets,  and  the  legal  effect
    thereof  ............................20 hours
```

We have no reason to question the character and extent of services rendered by Mr. Bishop, but it is impossible to determine from the record what portion of his services was necessarily rendered in connection with the motion to dismiss. The traverse and motion had been prepared by other counsel and it is not claimed that this required any of his time. In view of Mr. Gorman's statement in open court December 14, 1939 that the county would in all probability dismiss the proceeding as to respondent and the stipulation that no further expense for legal services would be in-

curred after that date, it seems to us that the amount awarded by the court is excessive.

Respondent's counsel argue that Bishop rendered most of his services prior to December 14, 1939, when they and the court were first apprised of the county's intention to dismiss the proceeding as to respondent. This argument is not borne out by the record, however. Bishop testified that he rendered services during November and December 1939 and January 1940. In view of the fact that his appearance was not entered until December 14, 1939, and that he was advised on that date that the county would in all probability dismiss the proceeding as to his client, he was not justified in giving the time and attention to the proceeding that his testimony indicates.

We have no way of determining what a fair and reasonable charge would be under the circumstances, since the evidence does not disclose what time and effort was devoted to preparation for a hearing on the motion to dismiss, and, therefore, the judgment of the circuit court is reversed and the cause is remanded with directions that the court limit the testimony to services necessarily rendered in the preparation and filing of appearances, traverse and motion to dismiss and the hearing thereon, and to fix the fee accordingly.

*Judgment reversed and cause remanded with directions.*

SCANLAN, P. J., and SULLIVAN, J., concur.